## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

STIRLING A. CANNONIER. )
)
                Plaintiff, )    **CIV. NO.: 07-cv-00049**
     v. )
)
**TURNER INTERNATIONAL, L.L.C. and** )
**TURNER OF ST. CROIX** )
**MAINTENANCE, INC**. )
)
              Defendant. )
_____ )

## MEMORANDUM OPINION

Finch, Senior Judge

      THIS MATTER comes before the Court on a Motion to Stay Pending Arbitration filed by

the Defendants Turner International, LLC and Turner of St. Croix Maintenance, Inc.   Plaintiff

Stirling Cannonier opposes such Motion on the following grounds: (1) that the agreement to

arbitrate cited by Defendants is not applicable to the time period of Plaintiff's claims; (2) the

Plaintiff did not knowingly and voluntarily waive his constitutional right to trial by jury; and (3)

the arbitration agreement is both procedurally and substantively unconscionable.

### I.      Background

      Plaintiff Stirling Cannonier's employment with Turner St. Croix Maintenance ("TSCM")

began on January 31, 2003, at which time he signed an Individual Employment Agreement

("Agreement").   The Agreement contained an arbitration clause that required Plaintiff to

arbitrate potential claims—including claims arising from an employment dispute—against

TSCM, as well as potential claims against any other entity at the Hess refinery. (Def. Ex. A,

8-11 (section 17 of Employment Agreement dated Jan. 31, 2003)).[1] Plaintiff also signed a dispute resolution agreement ("DRA").[2] The Employment Agreement and DRA required that any matters deemed non-arbitrable would be decided by a court instead of a jury.[3] The agreement to arbitrate disputes and to waive a jury trial in non-arbitrable matters was a condition under which TSCM agreed to employ Plaintiff. After signing the Agreement and DRA, Plaintiff was employed by TSCM as a scaffold builder leadman until laid off from this position on October 5, 2006. Plaintiff was a member of the collective bargaining unit and the union contract required the employer to recall employees on layoff. On or about March 3, 2007, Plaintiff was recalled by TSCM and offered employment as a carpenter. Again, as a

---

[1] Clause 17 of the Agreement provides as follows:

"Except as provided below in this section, all claims, controversies or disputes (collectively referred to as "claims" for purposes of sections 17 through 21 of this Agreement) arising out of or in any way relating to Employee's employment by Employer, or the termination of that employment, or arising out of or related to Employee's presence (during the term of Employee's employment by Employer) at The Facility, including claims by Employee against Employer, its shareholders or subsidiary or parent or affiliated companies, and its or their officers, directors, employees, and agents . . . shall be resolved solely and exclusively by arbitration as provided in this Agreement. In addition, Employee specifically agrees that all claims Employee may have against HOVENSA, LLC, its members, shareholders or subsidiary or parent or affiliated companies, and its or their officers, directors, employees, and agents as intended third-party beneficiaries of this Agreement . . . arising out of or in any way relating to Employee's employment by Employer, or the termination of that employment, or arising out of or related to Employee's presence (during the term of Employee's employment by Employer) at The Facility, or Employee's dealings with HOVENSA or HOVENSA's dealings with Employee, shall be resolved solely and exclusively by arbitration as provided in this Agreement. Provided, however, that Employee's obligation to arbitrate claims against HOVENSA shall be conditioned on HOVENSA's agreement . . . to be bound by the same material terms with respect to arbitration that are contained in sections 17 through 21 of this Agreement, and that are otherwise applicable to Employer in disputes between Employee and Employer.

(Defs. Ex. A, pp. 8-11.) In the Agreement, Employer is defined as "Turner St. Croix Maintenance, Inc." and the Employee as Stirling A. Cannonier.
[2] The DRA includes language identical to the portion of the Agreement cited above. (Def. Ex. A, DRA.)

[3] Section three of the DRA provides that

In the event that any matter or dispute arising between Applicant and TSCM, or Applicant and HOVENSA, is deemed by the arbitrator or by a court of competent jurisdiction to be non-arbitrable, Applicant and TSCM hereby expressly waive trial by jury with respect to such claim or dispute. Applicant and TSCM understand and agree that in such event, any decision regarding such claim or dispute will be made by the court as finder of fact, and not by a jury.

(Defs. Ex. A, DRA). The Employment Agreement provides the same language, substituting Employee/Employer for Applicant and TSCM/HOVENSA.

condition of employment, Plaintiff was required to sign TSCM's dispute resolution agreement. Plaintiff refused and consequently TSCM denied Plaintiff employment. Plaintiff in turn brought this civil action alleging that TSCM discriminated against black, West Indian, St. Croix workers, including Plaintiff, by requiring them to sign an arbitration agreement as a condition of employment.

## II.    Discussion

The enactment of the Federal Arbitration Act ("FAA") established a strong federal policy in favor of the resolution of disputes through arbitration. *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 263 (3d Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, "federal law presumptively favors the enforcement of arbitration agreements." *Id*. "A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration." *Id*. (citing 9 U.S.C. §§ 3-4) (citation omitted).

### A.  Burden of Proof

Title 9, section 3 of the United States Code provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

As Plaintiff correctly notes, "[t]he burden is upon the party seeking a stay to satisfy the court that a matter is referable to arbitration." *American Financial Capital Corp. v. Princeton Electronics Products*, 1996 WL 131145, at *7 (E.D. Pa. 1996) (citing *Miletic v. Holm & Wonsild*, 294 F.Supp. 772, 775 (S.D.N.Y. 1968) (citation omitted)).

## B. Applicable Time Period

Plaintiff asserts that the January 2003 Agreement expired when he was laid off on October 5, 2006 and, because the current action stems from an incident arising in 2007, the agreement to arbitrate is inapplicable to the claims brought herein. Defendants argue that the "plain language of the agreement" indicates that the Agreement did not expire when Plaintiff was laid off. Defendants cite section 17 of the Agreement:

> Employee and Employer specifically agree that sections 17 through 21 of this Agreement shall remain in full force and effect *notwithstanding the termination of this Agreement or Employee's employment* for any reason whatsoever.

(Def. Ex. A, 8-11) (emphasis added.)

The Court agrees with Defendants that the terms of the Agreement remain applicable. *See, e.g., Featherling v. Hovensa L.L.C.*, 2009 WL 497664 (D.V.I. Feb. 26, 2009). In *Featherling*, this Court held that the arbitration provisions of the employment agreement were applicable to the employee who had been laid off and then rehired. The relevant terms of that employment agreement stated that "this Agreement shall remain in full force and effect notwithstanding the termination of this Agreement or Employee's employment for any reason whatsoever." Likewise, the plain language of the Agreement between Plaintiff and Defendants, as cited above, indicates that the arbitration provisions remain in effect even if the Agreement or Employee's employment is terminated. *See B A Properties, Inc. v. Aetna Cas. & Sur. Co.*, 221

F. Supp. 2d 592, 596 (D.V.I. 2002) ("Court should look only to the plain language of the contract between the parties") (*citing Berne v. Aetna Ins. Co.*, 604 F. Supp. 958, 960 (D.V.I. 1985), aff'd, 782 F.2d 1026 (3d Cir.1985)). The Court concludes that the arbitration provision of the Agreement was operative at the time Plaintiff's alleged cause of action arose against Defendant in 2007.

### C. Knowing and Voluntary Waiver

Plaintiff asserts that his agreement to waive his constitutional right to a jury trial[4] in favor of arbitration was not a knowing and voluntary waiver as required by Virgin Islands Code Ann. tit. 5 § 815, which states that "[a]n agreement that waives a right guaranteed by the Constitution of the United States, is unenforceable, unless the waiver of the right is agreed to knowingly and voluntarily."

As the Supreme Court has held, an "[arbitration] clause[] may be revoked upon grounds as exist at law or in equity for the revocation of any contract." *Southland Corp. v. Keating*, 465 U.S. 1, 11 (1984) (citing 9 U.S.C. § 2 (1976) (internal quotations omitted)) . Apart from these grounds, the Supreme Court declared that there was "nothing in the [Federal Arbitration] Act indicating that the broad principle of enforceability is subject to any additional limitations under State law." *Id*. Following *Southland*, Defendant argues that applying section 815 to an arbitration agreement, impermissibly subjects the FAA to an "additional limit" that contravenes the mandate of the FAA and is thus preempted by it. Arguing by analogy, Defendants cite the

---

[4] Defendants argue that the Seventh Amendment right to a jury trial is a "remedial" rather than a "fundamental" constitutional right, and as such, is not a right guaranteed to residents of the Virgin Islands. However, pursuant to the 1968 amendment to Section 3 of the Revised Organic Act of 1954, the protections of the first to ninth amendments of the United States Constitution were extended to the Virgin Islands. Revised Organic Act of 1954 § 3, 48 U.S.C. § 1561. *See also University of Virgin Islands v. Petersen-Springer*, 232 F. Supp. 2d 462, 472 (D.V. I. 2002) ("The Seventh Amendment applies in civil actions brought in the Virgin Islands.").

preemption of Title 14 § 74a (b) of the Virgin Islands Code by the Third Circuit in *Edwards v. Hovensa*, 497 F.3d 355, 362 (3d Cir. 2007). Section 74a (b) states that "[a]n employer subject to this chapter may not require an employee to arbitrate a dispute as a condition of employment." 24 V.I.C. § 74a (b). In *Edwards*, the Third Circuit agreed with the District Court of the Virgin Islands that an "[arbitration] agreement is not unenforceable for failure to comply with 24 V.I.C. § 74a." *Edwards*, 497 F.3d at 362.

Although the Circuit courts are divided on the validity of the knowing and voluntary standard, Third Circuit precedent supports Defendants' argument. In *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 183-84 (3d Cir. 1998), overruled on other grounds by *Green Tree Financial Corp. Alabama v. Randolph*, 531 U.S. 79 (2000), the Third Circuit determined that the "knowing and voluntary" standard was not a generally applicable principle of contract law and therefore rejected its application in determining the validity of an arbitration agreement. The Third Circuit emphasized that "[n]othing short of a showing of fraud, duress, mistake or some other ground recognized by the law applicable to contracts generally" would excuse the district court from enforcing the arbitration agreement. *Id.* at 184. *See also Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 224 (3d Cir. 2008) ("applying a heightened "knowing and voluntary" standard to arbitration agreements would be inconsistent with the FAA"). Following the holdings of *Southland, Edwards, Seus and Morales*, the Court finds that section 815 may not be applied to an arbitration agreement.

### D. Unconscionability

Plaintiff argues that the arbitration agreement is procedurally unconscionable because the agreement constitutes a contract of adhesion, citing the fact that the agreement was presented

to Plaintiff on a "take it or leave it" basis and Plaintiff, as the weaker party, had no opportunity to negotiate the terms.  Plaintiff further asserts that the arbitration agreement was substantively unconscionable because it was drastically one-sided in TSCM's favor and because it is cost-prohibitive.  Plaintiff states that because he cannot afford to pay for the costs incurred if he were forced to arbitrate, the arbitral forum was effectively inaccessible to him.

Under the local law of the Virgin Islands, a court may refuse to enforce a contract or term of a contract that is unconscionable at the time the contract is made.  *Edwards*, 497 F.3d at 362 (citing Restatement (Second) of Contracts § 208).  The doctrine of unconscionability involves both procedural and substantive elements. *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 265 (3d Cir. 2003) (citations omitted). When the party with greater bargaining power prepares the contract and presents it on a take-it-or-leave-it basis, the agreement is termed a procedurally unconscionable contract of adhesion.  *Id.* (citing *Trailer Marine Transp. Corp. v. Charley's Trucking, Inc.*, 20 V.I. 282, 284 (1984) (citation omitted)). However, a contract term is "not unconscionable merely because the parties to it are unequal in bargaining position."  *Id.* (citing Restatement (Second) of Contracts, § 208 cmt. d).  "The party challenging the contract therefore must also establish "substantive unconscionability." This element refers to terms that unreasonably favor one party to which the disfavored party does not truly assent."  *Id.*  (citations omitted).

Plaintiff's argument that he had less bargaining power is insufficient to render the arbitration agreement unconscionable.  *Alexander*, 341 F.3d at 265; *Edwards,* 497 F.3d at 363 (a disparity in the consideration exchanged between the parties here standing alone does not make the arbitration agreement substantively unconscionable); *See also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining

power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."). Plaintiff's assertion that the agreement is "drastically one-sided" in TSCM's favor also fails to establish substantive unconscionability. Plaintiff states that there is a "dramatic imbalance in the contractual obligations between the parties" and cites the lack of mutual obligations imposed. However, the fact that an arbitration agreement requires only the employee, and not the employer, to arbitrate his claims does not, standing alone, render the agreement unconscionable. *Edwards*, 497 F.3d at 363.

Finally, the Court considers Plaintiff's argument that the costs of arbitration render the DRA unconscionable. "[A]n arbitration provision that makes the arbitral forum prohibitively expensive for a weaker party is unconscionable." *Shervington v. Gallows Bay Hardware, Inc.*, 2009 WL 1650414, at *3 (D.V. I. 2009) (citing *Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 284 (3d Cir.2004)). The burden is on the party seeking invalidation to establish that the costs are prohibitively expensive. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000) ("where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs") . Plaintiff states that the DRA is "cost-prohibitive" but declines to present any evidence in support of this assertion. The language of the DRA undermines Plaintiff's assertion:

> Unless Applicant elects otherwise, TSCM or HOVENSA shall pay the arbitrator's fees and expenses including transportation and lodging costs. TSCM shall also pay the fees of the American Arbitration Association, except that as a condition of arbitration, Applicant must pay to the AAA a portion of the AAA's fee equal to the fee for filing a complaint in the United States District Court of the Virgin Islands. If Applicant prevails in the arbitration, the arbitrator may in his/her discretion award the amount of such payment to Applicant. Each party shall bear its own costs and expenses, including attorney's fees, unless otherwise provided by any statute under which the claim arises. The arbitration hearing shall take place in St. Croix, U.S. Virgin Islands.

(Def. Ex. A, sec. 4.)

The terms of the DRA indicate that Defendants bear a significant burden of the arbitration costs and only require Plaintiff to pay the same amount he would pay to file a complaint in this Court. There is no evidence before the Court that the DRA is unconscionable due to prohibitive costs. *Cf. Shervington*, 2009 WL 1650414, at *3 (cost-splitting of arbitration fees where employee earned $6.50 an hour and was required to pay 20% of arbitration fees was substantively unconscionable).

## III.     Conclusion

The Court finds that when Plaintiff signed the Employment Agreement and the DRA, he agreed to arbitrate disputes arising out of his employment with Defendants, including the one currently before the Court. Therefore, the Court will grant Defendants' Motion to Stay the proceedings pending arbitration. A separate Order will follow.

ENTER:

Dated: February 25th, 2010          _____/s/_____
                                    HONORABLE RAYMOND L. FINCH
                                    SENIOR U.S. DISTRICT JUDGE